[827 NYS2d 67]

In the Matter of SHELDON ETHAN GREEN, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, October 31, 2006

APPEARANCES OF COUNSEL

*Rita E. Adler*, Hauppauge (*Stacey J. Sharpelletti* of counsel), for petitioner.

*Jerome Karp, P.C.*, Brooklyn, for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee served the respondent with a petition dated February 4, 2005, containing five charges of professional misconduct. After a preliminary conference on August 11, 2005, and a hearing on November 10, 2005, the Special Referee sustained all five charges. The Grievance Committee now moves to confirm the findings of the Special Referee and to impose such discipline upon the respondent as the Court deems just and proper. The respondent's counsel has submitted an affirmation in response in which he asks the Court to "temper its judgment and, upon reflection," impose the minimal sanction of a public censure.

The five charges of the petition are predicated upon a common set of factual allegations.

On October 4, 1993, James Blake was admitted to St. Joseph's Hospital in Flushing, Queens, complaining of abdominal pain. On October 5, 1993, the treating physicians, Drs. Satish Chawla and Nasser Ghassemi, diagnosed him as having acute appendicitis. Mr. Blake was transferred to Parkway Hospital in Forest Hills. The respondent was the staff physician in charge of the emergency room when Mr. Blake arrived on October 5, 1993, and observed his condition. The respondent wrote the physician's orders in Mr. Blake's emergency room record and made other notes, including the diagnosis: "R/O [rule out] appendiceal abscess/perforation." The emergency room record identifies the respondent only by the initials "SG."

Dr. Michael Reich, director of surgery at Parkway Hospital, operated on Mr. Blake on October 6, 1993. Mr. Blake remained at that hospital through October 17, 1993.

In or about December 1993 or January 1994, Mr. Blake's wife, Karen Blake, contacted the respondent to inquire whether he would represent her and Mr. Blake in a potential medical mal-

practice lawsuit or recommend someone to do so. On or about January 8, 1994, the respondent went to the Blakes' home where a contingency fee retainer agreement was signed. Shortly after being retained, the respondent referred the Blakes' case to Wolf & Fuhrman, a firm with which he had a professional relationship reviewing medical records on a part-time basis while he was employed full-time at Parkway Hospital. At no time did the respondent make any disclosure to the Blakes regarding the potential conflict of interest emanating from his multiple roles in this matter.

In or about February 3, 1994, Wolf & Fuhrman commenced a medical malpractice action on behalf of the Blakes in the Supreme Court, Queens County, naming Satish K. Chawla, M.D., Satish K. Chawla, M.D., P.C., Nasser K. Ghassemi, M.D., and St. Joseph's Hospital, as defendants.

In or about January 1995, the respondent became a full-time employee of Wolf & Fuhrman while continuing to work on a part-time basis for Parkway Hospital. The respondent performed legal services for the Blakes, including the preliminary conference, communicating with Dr. Reich to inquire if he would act as the plaintiffs' medical expert, representing the Blakes at their depositions, and deposing the defendant Dr. Ghassemi.

During his deposition on July 19, 1995, Mr. Blake testified that he did not see the respondent either time he was at Parkway Hospital. During her deposition that same day, Mrs. Blake testified that the respondent had nothing to do with her husband in the emergency room on October 5, 1993. The respondent did not correct or clarify their testimony or notify the defendants of his involvement.

The respondent left the employ of Wolf & Fuhrman in late 1997 and subsequently asserted a lien against any recovery in the Blakes' case.

The case was dismissed as against the defendant St. Joseph Hospital prior to trial. Charles Faillace, counsel for Dr. Chawla, served a subpoena on the respondent in or about March 2000 compelling him to testify at trial. On the morning the trial was scheduled to begin, Mr. Faillace learned from the respondent that he had actually seen Mr. Blake in the Parkway Hospital emergency room on October 5, 1993, and made notes in the record.

At a hearing before the Honorable Charles LaTorella on March 23 and 24, 2000, the respondent testified, outside the

presence of the jury, with respect to his involvement in the emergency room on October 5, 1993, and his subsequent role as the Blakes' attorney. Justice LaTorella issued an oral decision dismissing the Blakes' case based on his findings that Mr. Blake's condition upon arrival at the Parkway Hospital emergency room on October 5, 1993, was of the utmost materiality; that the respondent was a material fact witness concerning Mr. Blake's condition upon arrival at the hospital, as well as a treating physician; and that the respondent's failure to disclose that he was a fact witness and/or treating physician severely prejudiced the defendants' case. The case was dismissed by order dated April 24, 2000. This Court affirmed that order by decision and order dated November 18, 2002.

Charge One alleges that the respondent accepted employment by the Blakes without obtaining their consent after full disclosure of his own financial, business, property, or personal interests that reasonably may have affected the exercise of his professional judgment on their behalf, in violation of Code of Professional Responsibility DR 5-101 (a) (22 NYCRR 1200.20 [a]).

Charge Two alleges that the respondent accepted employment by the Blakes when he knew, or it was obvious that he ought to be called as a witness on their behalf, in violation of Code of Professional Responsibility DR 5-102 (a) (22 NYCRR 1200.21 [a]).

Charge Three alleges that the respondent accepted employment by the Blakes when he knew, or it was obvious that he may be called as a witness other than on their own behalf and it was apparent that his testimony would or might be prejudicial to them, in violation of Code of Professional Responsibility DR 5-102 (b) (22 NYCRR 1200.21 [b]).

Charge Four alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), based upon the conduct set forth.

Charge Five alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based on the aforesaid misconduct.

Based on the respondent's admissions and the evidence adduced, the Special Referee properly sustained all five charges. The Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider his expressed remorse and his contention that venality played no part in his actions. The respondent attributes his action to his inexperience and naivete. He submits that certain findings made with respect to the underlying medical malpractice action were hasty. According to the respondent, the prior findings have no applicability to these proceedings inasmuch as he was not a party in that matter. He asserts that any claim of prejudice by the defense was no more than an afterthought inasmuch as his testimony would have been of no value in view of the medical information already at their disposal.

The respondent's prior disciplinary history consists of a personally delivered letter of admonition issued in February 2002 for engaging in conduct adversely reflecting on his fitness as a lawyer by making inappropriate comments, inter alia, about a male court reporter's smoking habits, and grabbing and kissing that reporter on the lips.

Under the totality of circumstances, the respondent is publicly censured for his professional misconduct.

PRUDENTI, P.J., FLORIO, MILLER, SCHMIDT and MASTRO, JJ., concur.

Ordered that the motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent is publicly censured for his professional misconduct.